### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ERICA HENRY,** *et al.*, | ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | **Civil Case No. 11-1293 (RJL)** |
| **FRIENDSHIP EDISON P.C.S.,** | ) ) ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION
(July 21, 2011) [## 10, 11]

Plaintiffs bring this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 – 1461, against Friendship Edison Public Charter School ("Friendship Edison"). Plaintiffs are seeking $11,342.15 in attorneys' fees incurred in connection with an administrative due process complaint. Before the Court are the parties' cross-motions for summary judgment. Pls.' Mot. Summ. J. ("Pls.' Mot.") [Dkt. # 10]; Def.'s Opp'n & Cross Mot. Summ. J. ("Def.'s Mot.") [Dkt. # 11]. After due consideration of the parties' pleadings, the relevant law, and the entire record herein, defendant's motion is GRANTED and the plaintiffs' motion is DENIED.

### BACKGROUND

On January 21, 2011, plaintiff Erica Henry, on behalf of her minor child, H.H. (together, "plaintiffs"), a student at Friendship Edison, filed an administrative due process complaint against Friendship Edison. *See generally* Compl. [Dkt. # 1], Ex. A, Due Process Complaint Notice. Plaintiff Henry claimed that Friendship Edison had

1

committed six separate IDEA violations by failing to identify and evaluate H.H. as a child with a suspected disability. *Id.* at 1.[1]   Plaintiff proposed three forms of relief.  First, plaintiff sought declaratory relief confirming Friendship Edison's denial of a "free and appropriate public education" ("FAPE") as to the six claimed IDEA violations.  *Id.* at 2. Second, plaintiff sought multiple types of injunctive relief, including requiring Friendship Edison to fund independent evaluations for H.H., conduct an Individualized Education Program ("IEP") meeting within five days of the final disability evaluation and develop an Individualized Education Program  ("IEP") for the child, and reimburse the plaintiff's attorneys' fees and costs.  *Id.* at 2-3.  Finally, plaintiff requested that Friendship discuss and determine appropriate compensatory education measures for H.H.  *Id.* at 3.  Prior to the administrative hearing, the parties held a resolution meeting on February 8, 2011, at which the defendant offered to conduct certain evaluations of H.H.  Compl. Ex. B, Hearing Officer Determination 1, 8.  Plaintiff Henry, however, refused to consent to the offered evaluations, and no settlement was reached.  *Id.* at 8.

Subsequently, the parties participated in a March 4, 2011 due process hearing wherein the Hearing Officer narrowed the following  two issues for consideration: (1) "Did [Friendship Edison] fail to evaluate the student upon the request of the parent?" and (2) "Did [Friendship Edison] violate its child find obligations under the special education

---

[1]     Specifically, plaintiffs complained that Friendship Edison had failed (1) to evaluate a child with a suspected disability; (2) to timely evaluate a child with a suspected disability; (3) to evaluate a child with suspected disability upon parental request; (4) to timely evaluate a child with a suspected disability upon parental request; (5) to identify, locate, and evaluate a child with a suspected disability; and (6) to timely identify, locate, and evaluate a child with a suspected disability.  Compl. Ex. A at 1.

laws by failing to evaluate the student?" Compl. Ex. B at 3. The Hearing Officer concluded that the first allegation was meritless because there was no evidence that plaintiff Henry ever requested a special education evaluation for her child. Compl. Ex. B at 11-12. As to the second allegation, the Hearing Officer concluded that Friendship Edison had violated its "child find" obligations under the IDEA and ordered the school to perform a comprehensive psychological evaluation on the child and the parent to provide the necessary consent for that evaluation. *Id.* at 12-18; *see also* 20 U.S.C. § 1412(a)(3). However, the Hearing Officer denied all of the other requested relief, including the plaintiff's requests for speech language and social history evaluations and for funding for independent evaluations, and ordered plaintiff Henry to provide the consent, previously-denied, for the evaluation. *Id.* at 18.

On July 18, 2011, plaintiffs initiated this action, seeking $11,342.15 in attorneys' fees as prevailing party under the IDEA. Compl. 1, 3-5. The parties' cross-motions for summary judgment are now pending before the court.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Therefore, the movant bears the burden, and the court will draw "all justifiable inferences" in the favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). Nevertheless, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal

3

quotations omitted).  Factual assertions in the movant's affidavits may be accepted as true

unless the opposing party submits its own affidavits, declarations, or documentary

evidence to the contrary.  *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

## ANALYSIS

The IDEA's primary purpose is "to ensure that all children with disabilities have

available to them a free appropriate public education."  20 U.S.C. § 1400(d)(1)(A).

School officials also have an affirmative duty under the IDEA to locate and evaluate,

within their school system, children suffering from disabilities—an obligation referred to

as "child find."  20 U.S.C. § 1412(a)(3); *see also B.R. ex rel. Rempson v. District of*

*Columbia*, 802 F. Supp. 2d 153, 160 (D.D.C. 2011).  This duty is triggered by a

reasonable suspicion that a student has a disability.  20 U.S.C. § 1412(a)(3).  To further

compliance with these requirements, the IDEA affords certain "guaranteed procedural

safeguards," including due process hearings, to the parents of a disabled student who

object to the "identification, evaluation, or educational placement of the child, or the

provision of a free appropriate public education to such child."  20 U.S.C. §§ 1415(a),

(b)(6), (f)(1).

Courts are authorized to award reasonable attorney's fees in IDEA actions to a

prevailing party who is the parent of a child with a disability.  20 U.S.C. § 1415(i)(3)(B);

*see also Moore v. District of Columbia*, 907 F.2d 165, 166 (D.C. Cir. 1990).  To

determine whether a plaintiff is a "prevailing party" under the IDEA, the court applies a

three-part test: "(1) there must be a 'court-ordered change in the legal relationship' of the

parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the

judicial pronouncement must be accompanied by judicial relief." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010), quoting *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492-93 (D.C. Cir. 2003).  For the following reasons, the plaintiff is unable to satisfy the test's first and third prongs, and therefore does not qualify as a prevailing party under existing case law.

Plaintiff argues that the she is a prevailing party because the petition resulted in a finding that the defendant had violated its "child find" obligations under the IDEA and an order that the defendant correct that violation by performing a psychological evaluation. Pls.' Mot. 8; *see also* Compl. Ex. B. 16-18.  Unfortunately for the plaintiff, however, it is the courts, not the hearing officers, that determine prevailing party status.  *Artis v. District of Columbia*, 543 F. Supp. 2d 15, 22 (D.D.C. 2008).  Put simply, a hearing officer's statements are *not* determinative.  *See Bush ex rel. A,H. v. District of Columbia*, 579 F. Supp. 2d 22, 30 (D.D.C. 2008) (noting that a hearing officer's conclusion that a school was a prevailing party and did not deny FAPE was not determinative).  Here, the Hearing Officer found that only one of the issues raised at the administrative hearing had any merit.  Compl. Ex. B, 10-15.  Moreover, the Hearing Officer's determination as to that issue did not actually change the parties' legal relationship because Friendship Edison's obligation was contingent on its obtaining the parent's consent.  Compl. Ex. B 18; *see also Artis*, 543 F. Supp. 2d at 24 (holding that hearing officer's noting the parties agreement did not constitute a change in the parties' legal relationship).  Thus, to comply with the order, Friendship may not have had to take any action, depending on plaintiff's action.  In sum, it is impossible to conclude that the plaintiff succeeded in accomplishing

a primary objective of her due process complaint.   Indeed, the hearing officer ultimately ordered only one psychological evaluation, while finding that the parent had never requested a special education evaluation and had refused a previous evaluation offer at the resolution meeting.   Thus, plaintiff does not satisfy the first of the three requirements.

Plaintiffs claim also fails for another reason: although the Hearing Officer awarded plaintiff some relief, that relief is not sufficient to surpass the "technical and *de minimis*" threshold required by law.   *See Tex. State. Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S.782, 792 (1989).   The only relief that plaintiff received was the order for the comprehensive psychological examination, which, was contingent on obtaining parental consent.   Furthermore, as defendant rightly notes, the relief obtained was equivalent to, or even less than, that offered at the resolution meeting. Def.'s Mot. 7; *see* AR 355, Resolution Meeting Notes (noting that Friendship Edison offered "to develop a student evaluation plan and conduct appropriate evaluations, including a PsychoEducational, and a Speech and Language evaluation").   The only ascertainable reason that those evaluations were not conducted was the plaintiff's refusal to consent to the tests. AR 355.   And, the Hearing Officer denied *all* of the other requested forms of relief, including the plaintiff's requests for funding for independent evaluations.   *Id.* at 16-18.   Thus, it cannot be said that this relief is anything more than "technical and *de minimis*," and the plaintiff therefore fails to satisfy the third requirement for "prevailing party" status.   *See* Def.'s Mot. 7-9; *see also Tex. State. Teachers Ass'n*, 489 U.S. at 792.[2]

---

[2]      Even if plaintiffs were a prevailing party, any award of attorney's fees, awarded after a review of a formal fee petition by plaintiff, would be subject to a substantial

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS the defendant's Cross Motion

for Summary Judgment [# 11] and DENIES the plaintiffs' Motion for Summary

Judgment [# 10].  An Order consistent with this decision accompanies this Memorandum

Opinion.

RICHARD J. LEON
United States District Judge

---

reduction.  "[T]he degree of the plaintiff's overall success goes to the reasonableness of
the award."  *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist*, 489 U.S. 782, 783
(1989).  As such, courts may reduce the overall fee award to reflect the degree of success.
*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983), *abrogated on other grounds by
Gisbrecht v. Barnhart*, 535 U.S. 789, 795-805 (2002).  Here, the plaintiff only prevailed
on one of the two issues addressed at the hearing.  Although the initial hearing request
claimed additional violations and a denial of FAPE, the Hearing Officer noted that the
only issues to be resolved at the hearing were the alleged failure to evaluate upon parent's
request and the alleged violations of the school's child find obligations.  Compl., Ex. B,
3.  As to the first issue, the Hearing Officer found that the parent's "unequivocal
testimony" was "to the contrary" and that it is "difficult to understand why this allegation
is in the complaint."  Compl. Ex. B 11-12.  And, plaintiff's extremely limited success as
to the second issue has already been discussed.  Moreover, the plaintiffs have not
submitted any evidence that the fees charged were reasonable or "based on rates
prevailing in the community in which the action or proceeding arose for the kind and
quality of services furnished."  20 U.S.C. § 1415(i)(3)(C).  Rather, plaintiffs only
attached an invoice for $11,342.15 to their complaint.  Compl., Ex. C.  Thus, these fees
might be subject to additional reductions based on a comparison of prevailing market
rates.